UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLEEN F. SULLIVAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN A. FINN, et al., <br><br> Defendants. | Case No. 3:17-cv-05799-WHO <br><br> **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 50 |

Siblings and plaintiffs Kelleen and Ross Sullivan bring claims against Kelleen's ex-husband Stephen Finn,[1] alleging that he squeezed them out of ownership and operational control of their family winery, the Sullivan Vineyards Corporation ("SVC") and Sullivan Vineyards Partnership ("SVP"). SVC and SVP's bankruptcy case recently settled, and as part of the settlement agreement the Trustee released all claims on behalf of the Estates. Finn's pending motion for judgment on the pleadings requires me to decide whether the Sullivans have individual claims against Finn, namely whether they allege harm that is not incidental to the harm suffered by SVC and SVP. As pleaded, the complaint fails to allege individual claims, but the Sullivans are entitled to an opportunity to amend. Accordingly, I will deny the motion for judgment on the pleadings without prejudice and dismiss the complaint with leave to amend.

**BACKGROUND**

My March 8, 2018 Short Order on Defendants' Motion to Transfer lays out the factual background of this case; I incorporate it by reference here.[2] Order on Mot. to Transfer [Dkt. No.

---

[1] The Sullivans also bring claims against Trust Company of America, Inc. ("TCA"), a company in which Finn owns a majority of voting stock.

[2] In that Order, I wrote that I was "inclined to think that plaintiffs potentially [had] claims that

41]. After issuing that Order, I referred the case to the Hon. Dennis Montali for settlement. Dkt. No. 42. The parties were not able to reach a global settlement, but eventually Chapter 11 Trustee Timothy Hoffman "negotiated a compromise involving all principal parties in the Bankruptcy Cases save for the Sullivans." Request for Judicial Notice[3] ("RJN") Ex. B [Dkt. No. 51-2], Declaration of Aron Oliner ("Oliner Decl.") ¶ 18. On April 3, 2019, Hoffman filed an application for an order authorizing him to enter into that compromise on behalf of SVC and SVP. RJN Ex. A [Dkt. No. 51-1]. Bankruptcy Judge Roger L. Efremsky issued such authorization on May 20, 2019. RJN Ex. C [Dkt. No. 51-3].

In the settlement, the Trustee, acting on behalf of SVC and SVP, released all claims that were within his power to release: "For the avoidance of doubt, the Trustee is providing the Settling Creditors with the broadest possible release he may provide on behalf of the Estates . . . ." RJN Ex. B[4] ECF p.9–17 ("Settlement Agreement" or "Agreement") 4. The Agreement went on to note, "The Trustee is not releasing any Claims held directly and exclusively by Ross Sullivan or Kelleen Sullivan as individuals but the Trustee is releasing Claims of the Estate that could discharge derivative or indirect claims by Ross Sullivan or Kelleen Sullivan . . . ." *Id.* The parties then stipulated to dismiss the adversary bankruptcy proceeding with prejudice. RJN Ex. D [Dkt. No. 51-4].

On June 12, 2019, Finn filed the instant motion for judgment on the pleadings. Motion ("Mot.") [Dkt. No. 50]. I heard argument on August 21, 2019. Dkt. No. 64.

---

[were] independent of the claims of the entities in bankruptcy," but I did not decide the question. Order 1. That remains my view, despite the breadth of the settlement in bankruptcy and the resolution of the Colorado divorce proceedings. But as this Order indicates, plaintiffs must plausibly show how, in light of these developments, they have been damaged in a way that is distinct from the damages Finn caused to the corporation and independent of their status as shareholders.

[3] Finn requests judicial notice of certain documents filed in the parties' bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of California, entitled *In re Sullivan Vineyards Corporation and In re Sullivan Vineyards Partnership*, N.D. Cal. Bankruptcy Court Case No 17-10065-RLE-11.

[4] The Settlement Agreement follows the declaration of Aron Oliner at the same docket entry.

**LEGAL STANDARD**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) utilizes the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Under both provisions, the court must accept the facts alleged in the complaint as true and determine whether they entitle the plaintiff to a legal remedy. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). Either motion may be granted only when it is clear that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citations omitted). Dismissal may be based on the absence of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 534 (9th Cir. 1984).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pleaded facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

**DISCUSSION**

The parties agree on two key facts underlying the instant motion. First, the Settlement Agreement resolved all claims for damage to SVC and SVP. *See* Mot. 11; Oppo. 7; Reply 6. Second, the Settlement Agreement expressly did not release the Sullivans' individual claims, to the extent they exist. *See* Oppo. 7; Reply 6. Accordingly, the question is whether the Sullivans

have plausibly pleaded individual claims that stand separate and apart from the damages Finn's actions caused to SVP and SVC.

A shareholder may bring an individual rather than derivative action "only if the damages were not *incidental* to an injury to the corporation." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 124 (1999), *as modified on denial of reh'g* (June 14, 1999).[5] A personal claim "originate[s] in circumstances independent of [the plaintiff's] status as a shareholder." *Hilliard v. Harbour*, 12 Cal. App. 5th 1006, 1015 (Ct. App. 2017), *review denied* (Sept. 13, 2017) (citing *Nelson*, 72 Cal. App. 4th at 124). By contrast, an action is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969) (internal quotation marks and citation omitted). "[T]he pivotal question is whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). In one case, a court allowed individual claims to proceed where the plaintiff alleged "that he was deprived of a fair share of the corporation's profits as a result of defendants' generous payment of excessive compensation to themselves." *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1258 (2004) (noting that the defendants admitted on cross-examination that the bonuses were designed to reduce the profits that had to be shared with the plaintiff).

The Sullivans set forth five theories of injury that they assert are not incidental to injuries to SVC and SVP. Oppo. 9. First, Finn "[froze] out the other owners" by convincing the Sullivans to allow him to personally guarantee the SVB Note. *Id.* Second, Finn diluted the Sullivans' investment by convincing them to allow him to acquire 10% additional interest in SVC. *Id.* For

---

[5] The Sullivans question Finn's reliance on *Nelson* given that it cited *Rankin v. Frebank Co.*, 47 Cal. App. 3d 75 (Ct. App. 1975), which the *Jara* court called "questionable authority." *See* Oppo. 8; *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1256 (2004) (noting that *Rankin* relied on one case that *Jones* expressly rejected and another that was inconsistent with *Jones*). But as Finn points out in his reply, many recent cases, including one from this district, have cited *Nelson* without raising such concerns. *See* Reply 2 n.3; *Carlson v. Clapper*, No. 18-CV-07195-VKD, 2019 WL 1061743, at *3 (N.D. Cal. Mar. 6, 2019).

these two theories, Finn argues that the Sullivans were not harmed because Kelleen was awarded all of Finn's ownership interest in the winery after the divorce. Reply 3. Third, the Sullivans assert that Ross experienced an individual injury when Finn fired him as SVC's CEO. Oppo. 9. For this theory, Finn argues that Ross fails to allege any economic injury, that a wrongful termination claim would have to proceed against SVC, and that any such claim is time barred. Reply 4. Fourth, the Sullivans assert that Finn caused them to incur costs and legal fees to defend his suit against the minority shareholders. Oppo. 9. Fifth, Finn caused the Sullivans to incur costs and legal fees by filing litigation to distract the winery's owners. *Id.* Finn argues these theories fail because the Sullivans have not alleged that they personally paid the litigation fees, and most of the litigation took place after the divorce when Finn was no longer a shareholder who owed fiduciary duties. Reply 4–5.

The complaint does not clearly plead individual claims. For the first two theories, whether or not Finn increased his position of power over the winery, the Sullivans do not plead an injury because all of Finn's shares reverted back to Kelleen after their divorce.[6] *See* Complaint ("Compl.") [Dkt. No. 1] ¶ 84. If Ross intends to bring a claim based on damages associated with his own decreased ownership interest, he should clearly plead the theory for such a claim. For the wrongful termination theory, it is unclear why that claim could be brought against Finn as a fiduciary rather than SVC and SVP as an employer. In addition, any injury Ross suffered is incidental to those SVC and SVP suffered because by firing Ross and installing an unqualified replacement, Finn hurt the business itself. *See Nelson*, 72 Cal. App. 4th at 125 (finding that obligations violated by limiting plaintiff's role were owed to the corporation because the decisions "amount[ed] to alleged misfeasance or negligence in managing the corporation's business, causing the business to be a total failure"). Finally, the complaint insufficiently pleads claims based on litigation costs. *See* Compl. ¶ 71 ("The legal expenses incurred by SVP, SVC and the Sullivan

---

[6] Claims based on Finn running the Winery into the ground and forcing it into bankruptcy are incidental to SVC and SVP's damages. Whether or not Finn's actions were motivated by a desire to "render it impossible for the Sullivans to keep the Winery in their family," those claims do not originate in circumstances independent of the Sullivans' shareholder status. *See* Compl. ¶ 84; *Hilliard*, 12 Cal. App. 5th at 1015. The fact that the Sullivans felt the damages on a more personal level does not convert them into individual damages.

5

family members in litigation with Finn through September 2017 are at least $1,545,000."). The Sullivans need to explain when these expenses were incurred and what specific amounts they paid that were not reimbursed by Finn or the corporation. To the extent the Sullivans wish to bring claims based on expenses they incurred after the October 7, 2015 divorce, they must lay out the theory on which the fiduciary relationship survived or otherwise on what basis they are entitled to recover for expenses not reimbursed by Finn or the corporation. *See id.* ¶¶ 60, 68.

Plaintiffs are granted leave to amend to set forth their allegations with more specificity to plausibly allege non derivative claims for which they suffered injury.

## CONCLUSION

For the reasons set forth above, the Sullivans' complaint is DISMISSED WITH LEAVE TO AMEND within twenty days of the date below.

**IT IS SO ORDERED.**

Dated: September 6, 2019



William H. Orrick
United States District Judge